UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **HILDA L. SOLIS,** *Secretary of Labor,* *United States Dep't of Labor,* | ) ) ) | **CASE NO. 5:09CV2886** |
| Plaintiff, | ) ) | **JUDGE SARA LIOI** |
| vs. | ) ) | **MEMORANDUM OPINION & ORDER** |
| **MILLING AWAY, LLC, et al.,** | ) ) | |
| Defendants. | ) ) | |

Before the Court is the motion for summary judgment filed by plaintiff Hilda L. Solis, the United States Secretary of Labor ("plaintiff" or the "Secretary") (Doc. 27), defendants' memorandum in opposition (Doc. 29), and the Secretary's reply (Doc. 30). For the reasons discussed below, the motion is **GRANTED**.

## I. BACKGROUND

On December 14, 2009, the Secretary filed this action alleging defendants Milling Away, LLC ("Milling Away") and Steven Harvey ("Mr. Harvey"), owner of Milling Away, (collectively as "defendants") violated the Fair Labor Standards Act, 29 U.S.C.§ 201 *et seq.* (the "FLSA" or the "Act"). (Doc. 1.) The complaint seeks to enjoin further violations of the FLSA and to recover damages on behalf of the affected employees. (*Id.*)

Defendant Milling Away is an Ohio corporation located in Tallmadge, Ohio, engaged in the business of manufacturing and installing furniture. (Compl. ¶ III(a); Answer ¶ 3.) Mr. Harvey is the owner and secretary treasurer of Milling Away. (Doc. 29-1, Harvey Aff. ¶ 2.) The complaint alleges that the defendants comprise an enterprise with a dollar volume in excess

of $500,000 annually and are, therefore, subject to the minimum wage and overtime provisions of the Act. (Compl. ¶ IV(b).)

The Secretary asserts that, from March 7, 2009 through May 2, 2009, defendants failed to pay minimum wage and/or overtime compensation to nine of their employees. (Compl. ¶ V; Doc. 1-1.) Based on the investigation of Investigator Stephen Banig employed by the Wage & Hour Division of the Department of Labor, defendants owe the nine employees a total of $24,785.09 in unpaid wages. (Doc. 27-2, Banig Aff. ¶¶ 2, 4(e).) The Wage & Hour Division obtained an agreement from defendants to pay their former employees the amounts listed in Mr. Banig's report and to submit proof of payment to the Division office no later than July 3, 2009; however, defendants failed to make any payments. (Banig Aff. ¶ 4(f).) A copy of the parties' agreement, Form WH-56, captioned "Summary of Unpaid Wages" and bearing the defendant Harvey's signature, is attached to the complaint. (Doc. 1-2.)

On December 14, 2009, the Secretary filed this action. On August 12, 2010, the parties informed the Court that they had reached a tentative settlement. On September 27, 2010, the parties filed a status report (Doc. 19), confirming that a settlement agreement had been reached, and on October 7, 2010, the Court closed this case subject to reopening to resolve any disputes regarding the settlement agreement.

On November 2, 2010, the Secretary filed a motion to reopen the case and return it to the active docket (Doc. 21), indicating that defendants had not executed and returned the settlement documents. On November 24, 2010, following attempts at mediation, the Court ordered the case reopened and set new deadlines for dispositive motions.

At a final pretrial conference held on March 2, 2011, settlement discussions were again held, and on March 4, 2011, the parties again notified the Court that they had reached a

settlement. The Court terminated the Secretary's pending motion for summary judgment and suspended all deadlines and the trial date pending final notice of defendants' compliance with the settlement agreement.

On October 13, 2011, the Secretary filed a motion to enforce the settlement (Doc. 32), indicating that defendants had made only one payment of $3,246.81 toward the agreed total of $19,480.85 (Doc. 32-3, Rodenhausen Decl. at 2.), and per the parties' agreement, in the event of defendants' default, the Court was to proceed with the case. (Doc. 32-1.) On October 14, 2011, the Court ordered that defendants had until on or before October 24, 2011 to file their response to the motion. Defendants never filed an opposition, and on October 28, 2011, the Court granted the motion to enforce settlement and took up the instant motion for summary judgment. (Doc. 33.)

The Secretary's motion for summary judgment asserts that no genuine issue of material fact exists and that plaintiff is entitled to judgment as a matter of law. (Doc. 27.) Defendants oppose the motion (Doc. 29), arguing that Milling Away "had substantially less than $500,000.00 in annual gross sales made or business done" during 2009 and 2010 and that the actual amount owed to defendants' employees was $19,840.80, the amount the Secretary was willing to settle this lawsuit for. (Harvey Aff. ¶¶ 4-6, 9.) Further, defendants maintain that their failure to pay has not been in bad faith, but is a result of recent "hard economic times." (Doc. 29 at 3.)

In reply, the Secretary asserts that: (1) Mr. Harvey admitted that defendants' gross receipts for calendar year 2008, which is the controlling period, exceed $1 million (Doc. 30-1, Banig Aff. II ¶ 4); (2) defendants' figure ($19,840.80) is based on statements made during settlement negotiations and should not be considered by the Court; and (3) defendants' lack of

3

bad faith is not relevant to the motion and has no bearing on the facts and law presented. (Doc. 30.)

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a).

An opposing party may not rely merely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Rule 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors

could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established, which create a genuine issue of material fact. *Fulson v. Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III.    DISCUSSION

The FLSA requires employers to pay certain minimum wages and overtime to employees "engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1). The Act provides that any employer who violates the minimum wage or overtime provisions "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The authority to grant injunctive relief is established by Section 17 of the Act, 29 U.S.C. § 217.

### A. Defendants Are Properly Liable As Employers

The Secretary's motion asserts that Steven Harvey and Milling Away qualify as "employers" under the FLSA and are jointly and severally liable for the unpaid wages at issue in this case.[1] Defendants do not oppose this portion of the Secretary's motion. Accordingly, the Court finds as a matter of law that defendants are properly liable as employers of the employees in question, and the Secretary's motion for summary judgment on this issue is **GRANTED**. *See Larson v. Leading Edge Outsourcing, Inc.*, No. 3:08-00446, 2010 WL 1229348, at *7-8 (M.D. Tenn. Mar. 29, 2010) (holding that whether a party is an employer under the FLSA is an issue appropriate for summary judgment) (citing *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984)).

### B. Whether Defendants Are Covered By The FLSA

Under the FLSA, an "enterprise" is defined, in pertinent part, as "related activities performed (either through unified operation or common control) by any person or persons for a common business purpose[.]" 29 U.S.C. § 203(r)(1). The FLSA applies to any enterprise that is engaged in commerce or in the production of goods for commerce and has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and has an annual gross volume ("AGV") of sales made or business that is not less than $500,000.00. 29 U.S.C. § 203(s)(1).

---

[1] The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA recognizes there may be several simultaneous employers who may be responsible for FLSA compliance. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (citing *Falk v. Brennan*, 414 U.S. 190, 195(1973)). In *Dole*, the Sixth Circuit held that more than one employer can be held jointly liable for FLSA violations. *Id*. Additionally, " 'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.' " *Id.* (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)); *see also, Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994).

The Secretary argues that Milling Away operated as a manufacturer and installer of furniture under the direction and control of defendant Harvey. Thus, defendants were engaged in performance of related activities for a common business purpose, constituting an enterprise. Defendants raise no opposition in response to the Secretary's assertion.

Defendants dispute, however, whether they had an AGV in excess of $500,000.00 during the relevant period. Mr. Harvey contends that Milling Away's AGV did not exceed the statutory amount during 2009. The Secretary counters that Mr. Harvey admitted to its investigator that Milling Away had an AGV in excess of $1 million in 2008. The Secretary contends that, pursuant to the "rolling quarters" method outlined in 29 C.F.R. § 779.266(b), the Court must look to defendants' stated AGV for 2008 to determine whether defendants were covered by the FLSA in 2009.

"Under the express language of § 779.266(a), the rolling quarters method is a regulatory tool to determine whether a defendant employer, *who once met the gross sales requirement in the previous year*, continues to be subject to enterprise coverage in the following year." *Exime v. E.W. Ventures, Inc.*, 591 F. Supp. 2d 1364, 1375 (S.D. Fla. 2008) (emphasis in original) (citing *Donovan v. I-20 Motels, Inc.*, 664 F.2d 957, 958 (5th Cir. 1981) ("the rolling quarters method is a way of determining currently whether a business once covered by the Act continues to be subject to it")). The specific calculation under the rolling quarters method is set forth in *Donovan*, where the court stated:

> Under [the rolling quarters method], an employer determines if it is covered by the Act at the beginning of each quarter, by calculating its annual dollar volume based on the sum of the four preceding quarters. [...] In other words, on [January 1, 2009], the employer totals his gross volume of sales for the year ended [December 31, 2008]. If the total exceeds [the gross sales requirement], he is covered by the Act for the next quarter; if not, he is exempt from the Act.

7

*Donovan*, 664 F.2d. at 958 (citations omitted).

Here, there is no dispute that Milling Away met the AGV requirement in 2008, the year preceding the period in which the Secretary asserts defendants failed to pay the required wages (March 7, 2009 through May 2, 2009). According to the Secretary's investigator, defendant Harvey admitted to him that Milling Away's AGV for the prior two years was over $1 million each year. (Banig Aff. II ¶ 4.)[2] Thus, for the alleged violations occurring in the first quarter of 2009, which ended on March 31, 2009, defendants were covered by the FLSA regardless of their AGV for 2009. Accordingly, the Court concludes as a matter of law that defendants were covered by the FLSA during the first quarter of 2009.

For the violations which occurred in the second quarter of 2009 (those alleged from April 1, 2009 through May 2009), defendants are covered by the FLSA if their AGV exceeded $500,000.00 for the four preceding quarters, which would comprise the last three quarters of 2008 and the first quarter of 2009. The Secretary asserts that because Milling Away's AGV for 2008 was in excess of $1 million, it is reasonable to assume that their AGV for each quarter of 2008 was approximately one fourth of that total, or $250,000.00. Thus, according to the Secretary, with an AGV of $250,000.00 for the last three quarters of 2008, defendants would be covered by the FLSA for the second quarter of 2009 even if they had no AGV in the first quarter of 2009; therefore, defendants' assertion that they were not covered by the FLSA for the relevant period cannot support the denial of summary judgment.

---

[2] Defendants neither sought to strike the second affidavit of plaintiff's investigator, nor sought leave to file a sur-reply to the allegation that defendant Harvey admitted AGV in excess of $1 million in 2008 and in 2007.

8

The Secretary, however, is asking the Court to assume facts not in evidence, which the Court cannot, and will not, do.[3] In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id.* However, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Wiley v. United States,* 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson,* 477 U.S. at 249). The Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp.,* 822 F.2d at 1435-36. Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-52.

In this case, the parties have presented no evidence upon which the Court can reasonably infer defendants' AGV for the four quarters preceding the second quarter of 2009; and therefore, the Court cannot fairly apply the "rolling quarters" calculation as urged by the Secretary. First, defendant Harvey's averment that Milling Away did not meet the AGV requirement for 2009 is not supported by any specific facts. For example, Harvey has not presented any financial statements or records in support of his assertion. Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment. *Lewis v. Philip Morris Inc.,* 355 F.3d 515, 533 (6th Cir. 2004) (finding that "conclusory statements" unsupported by specific facts will not permit a party to survive

---

[3] The Court could just as easily assume that defendants' AGV for 2008 was spread across each quarter of 2008 in an infinite number of ways. For instance, it may be reasonable to assume that defendants earned $500,000.00 in the first quarter of 2008 and the remaining $500,000.00 of their $1 million AGV over the last three quarters of 2008. Under this assumption, if defendants had no AGV in the first quarter of 2009 and did not earn in excess of $500,000.00 over the preceding four quarters, then they would not be covered by the FLSA for the second quarter of 2009.

summary judgment); *Doren v. Battle Creek Health Sys.,* 187 F.3d 595, 598-99 (6th Cir. 1999) (holding that affidavits that contained no "specific facts" but "are merely conclusory, restating the requirements of the law, [...] cannot create a genuine issue of material fact sufficient to defeat summary judgment").

Likewise, the Secretary has come forward with only a blanket admission by Harvey as to Milling Away's AGV for 2008. This admission, however, does not help to establish what percentage of defendants' AGV was earned in each quarter. Faced with this dearth of evidence, the Court cannot conclude as a matter of law that defendants were covered by the FLSA during the second quarter of 2009.

As outlined below, however, this conclusion is not fatal to the Secretary's motion for summary judgment because, regardless of whether defendants were in fact covered under the FLSA during the entire period in question, defendants have offered no admissible evidence in contravention to the Form WH-56 agreement signed by defendant Harvey (Doc. 1-2), in which he agreed that defendants' employees were owed $24,785.09 in unpaid wages for the entire period at issue.

**C. Propriety of Judgment Ordering Payment of Back Wages**

The Secretary's motion next argues that the law is clear that wages must be paid in accordance with the Act, defendants did not do so, and in fact previously agreed to pay the amount owed as computed by the Department of Labor; therefore, summary judgment ordering defendants to pay $24,785.09 in back wages is appropriate.

In opposition, defendants do not dispute the Secretary's contention that they failed to pay their employees' wages during the period at issue; defendants only dispute the amount owed to the Secretary as contained in Form WH-56, which was signed by defendant Harvey.

(Doc. 1-3.) Defendants maintain that Mr. Harvey was mistaken when he signed that form and contend the correct amount owed is $19,480.85, which "the Secretary agreed […] was the amount actually owed and was willing to settle this lawsuit for […]." (Doc. 29 at 2.) In support of this assertion, defendants submitted the affidavit of Mr. Harvey. (Docs. 29-1, 29-2.) Mr. Harvey avers that he has knowledge of the financial affairs of Milling Away (Harvey Aff. ¶ 2), that the amount actually owed to Milling Away's former employees is $19,840.80 (*id.* at ¶ 4), which is also reflected in an attached itemization of wages prepared by plaintiff or its agent (*Id.* at ¶ 7), and that plaintiff agreed that this was the amount actually owed (*id.* at ¶ 6). The Secretary argues in reply that defendants' contention is based on statements made during negotiations between the parties and should not be considered by the Court in ruling on its motion for summary judgment.

Fed. R. Evid. 408 precludes admission of certain evidence "offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount," including "conduct or statements made in compromise negotiations regarding the claim[.]" To the extent the allegations in Harvey's affidavit are based on plaintiff's offer of settlement, they are inadmissible and are therefore insufficient to create a genuine issue of fact for trial.

Moreover, to the extent that Harvey's allegations are based on his own personal knowledge of Milling Away's "financial affairs" (Harvey Aff. ¶ 2), they are far too conclusory to satisfy defendants' burden of responding to the Secretary's motion for summary judgment, which was supported with specific evidence of the parties' agreement. "In summary judgment proceedings, affidavits containing mere conclusions have no probative value." *Bsharah v. Eltra Corp.*, 394 F.2d 502, 503 (6th Cir. 1968). Further, in responding to a well-supported motion for

11

summary judgment, an adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

Here, Mr. Harvey avers to the total amount owed and then relies on an itemization prepared by plaintiff or its agent. He has presented no "specific facts," such as how wages owed were calculated or whether the amounts alleged were based on his own personal observation of the hours that Milling Away's employees worked or from another source, such as the employees' own records. The Sixth Circuit "has long held that [m]ere conclusory and unsupported allegations, rooted in speculation, do not meet [the non-movant's] burden[]" of demonstrating that there is a genuine issue for trial. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (quoting *Bryant v. Commonwealth of Kentucky,* 490 F.2d 1273, 1274 (6th Cir. 1974) (per curiam)) (internal quotations omitted). Accordingly, the Court concludes that defendants have failed to demonstrate the existence of any material fact as to the amount owed, and **GRANTS** the Secretary's motion for summary judgment.

### D. Liquidated Damages

The Secretary next argues that, pursuant to 29 U.S.C. § 216(b), defendants' employees are entitled to an award of liquidated damages because defendants failed to pay these employees any wages during the relevant period and cannot meet the heavy burden required for the good faith defense to such an award.

Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages under the Act " 'are compensation, not a penalty or punishment.' "

*McClanahan v. Mathews,* 440 F.2d 320, 322 (6th Cir.1971) (quoting *Overnight Motor Co. v. Missel,* 316 U.S. 572, 583 (1942)); see also *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 (1945) ("It constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being." (internal quotations omitted)). "Rather, they are considered 'the norm' and have even been referred to by [the Sixth Circuit] as 'mandatory.' " *Solis v. Min Fang Yang*, 345 F. App'x 35, 38 (6th Cir. 2009) (quoting *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 585 (6th Cir. 2004)).

"A district court, however, has the discretion not to award liquidated damages to a prevailing plaintiff if 'the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938.' " *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002) (quoting 29 U.S.C. § 260); see also *Herman v. Palo Grp. Foster Home,* 183 F.3d 468, 474 (6th Cir. 1999). The burden on the employer is substantial and requires "proof that [the employer's] failure to obey the statute was *both* in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict." *Elwell*, 276 F.3d at 840 (quoting *McClanahan*, 440 F.2d at 322) (internal quotations omitted). "In the absence of such proof [, however,] a district court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." *Id.*

13

Here, defendants do not dispute that they failed to pay the subject employees. Defendants argue, however, that their failure to pay was not in "bad faith," but was due to the flagging economy and the effect the downturn has had on the construction industry, which they state is "common knowledge." Defendants state that they "quite simply have not had the money to pay." (Doc. 29 at 3.) The Secretary replies that defendants' denial of bad faith is irrelevant to its motion for summary judgment and has no bearing on the facts and law at issue. The Court agrees.

Defendants have offered no evidence that would satisfy their burden of proving they acted in good faith *and reasonably*, when they failed to pay their employees during the period at issue. Defendants offer absolutely no grounds, much less reasonable grounds, for believing that their act or omission was not a violation of the Act. *McClanahan*, 440 F. 2d at 322. The only proof of good faith and reasonableness offered by defendants is the bare assertion in Harvey's affidavit that defendants "have made [their] best efforts to acquire those monies in order to pay said back wages but due to the economy have not been able to do so as of this date." (Harvey Aff. ¶ 8.)

Summary judgment is appropriate where the nonmoving party fails to make a showing sufficient to create a genuine issue of material fact regarding a matter on which the nonmoving party has the burden of proof. *Celotex,* 477 U.S. 317, 323 (1986). Because defendants have the burden of proving good faith and reasonableness, and they failed to offer any evidence of reasonableness, an award of liquidated damages equal to the amount of back wages is mandated on summary judgment. *See Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968 (6th Cir. 1991) (affirming district court's liquidated damages award on summary judgment where only evidence submitted was employer's affidavit that it had "acted in good

14

faith in an effort to comply with the Act"); *Herman v. Palo Group Foster Home, Inc.*, 976 F. Supp. 696 (W.D. Mich. 1997).. Accordingly, the Secretary's motion for summary judgment on the issue of liquidated damages is **GRANTED**.

### E. Propriety of Injunctive Relief

Next, the Secretary argues that the facts in this case justify the entry of an injunction against defendants pursuant to 29 U.S.C. § 217, to prevent their future violation of the Act. Specifically, the Secretary asserts that defendants' failure to pay any wages at all to the identified employees during the period at issue, with no possible explanation, suggests a lack of good faith. Further, according to the Secretary, defendants' failure to pay back wages after agreeing to do so also indicates a lack of good faith. The Secretary asserts that, under these circumstances, defendants are unlikely to comply with the FLSA in the future and, therefore, an injunction is warranted.

The issuance of an injunction pursuant to § 217 is within the reasonable discretion of the trial court. *Martin v Funtime, Inc.*, 963 F.2d 110, 113 (6th Cir. 1992) (citation omitted). "The exercise of discretion is not unbridled, *Dunlop v. Davis,* 524 F.2d 1278, 1280 (5th Cir. 1975), and in exercising its discretion the court must give substantial weight to the fact that the Secretary seeks to vindicate a public, and not a private, right." *Id.* (quoting *Brock v. Big Bear Market No. 3,* 825 F.2d 1381, 1383 (9th Cir. 1987) (citation omitted)) (internal quotations omitted).[4] When exercising its discretion to enter an injunction the Court should consider: (1) the

---

[4] In *Martin*, the Sixth Circuit observed that:

> The purpose of issuing an injunction against future violations is to effectuate general compliance with the Congressional policy of abolishing substandard labor conditions by preventing recurring future violations. *Big Bear,* 825 F.2d at 1383; *Dunlop,* 524 F.2d at 1280. Prospective injunctions are essential because the cost of noncompliance is placed on the employer, *id.,* which lessens the responsibility of the Wage and Hour Division in investigating instances of noncompliance.

previous conduct of an employer; (2) the employer's current compliance; and (3) the dependability of the employer's promises of future compliance. *Id.* at 114.

Defendants urge that they have "continuously cooperated" with the Secretary and "have continuously wanted to make good on any obligation they owe," but they just do not have the money to pay. (Doc. 29 at 3.) Defendants' conduct prior to and during this litigation, however, belies their claim that they have cooperated with the Secretary and demonstrates that they cannot be depended on to comply with the Act in the future.

On July 3, 2009, Defendants entered into an agreement to make the delinquent wage payments to the employees listed in Form WH-56 (Doc. 1-2), but then failed without reasonable justification to make any payments. Further, as evidenced in the record of this case, defendants have represented to this Court numerous times that they were willing to settle this dispute and pay the affected employees, but have made only one payment toward satisfying their debt. On this record, the Court concludes that an injunction is warranted because (1) defendants failed to pay any wages to the identified employees during the relevant period without any reasonable justification; (2) defendants have failed to comply with the parties' numerous settlement agreements; and (3) the Court harbors serious doubt as to the defendants' willingness to comply with the Act in the future. Accordingly, the Court **GRANTS** the Secretary's motion for injunctive relief.

---

*Dunlop,* 524 F.2d at 1280. The imposition of an injunction is not punitive, nor does it impose a hardship on the employer "since it requires him to do 'what the Act requires anyway-to comply with the law.' " *Id.* at 1281 […].

*Id.* at 113-14.

16

IV.     CONCLUSION

In light of the foregoing, this Court concludes that there is no genuine issue of material fact and the Secretary is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Accordingly, the Secretary's motion is **GRANTED**, and the Court will enter judgment in favor of the Secretary in the amount of $21,538.28 ($24,785.09 less defendants' prior payment of $3,246.81) for unpaid minimum wage and overtime compensation due under the Act, plus liquidated damages in the amount of $24,785.09 for the employees and time periods indicated in Form WH-56, Exhibit A to the complaint (Doc. 1-2).

Further, in accordance with the terms set forth in the separate judgment entry filed contemporaneously to this Memorandum Opinion, defendants, their officers, agents, servants, employees, and those acting in active concert or participation with them, are hereby permanently enjoined and restrained from future violations of Section 15(a)(2) of the FLSA, as amended.

**IT IS SO ORDERED**.

Dated: February 1, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**